

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Zachary B. Stendig* | *Suite 400* | *DIRECT: 410-209-4893* |
| *Assistant United States Attorney* | *36 S. Charles Street* | *MAIN: 410-209-4800* |
| *Zachary.Stendig@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-3124* |

June 5, 2020

The Honorable Stephanie A. Gallagher
United States District Judge
United States Courthouse
101 W. Lombard Street
Baltimore, Maryland 21201

  Re  <u>United States v. Ronald Wilson</u>
     Crim. No. SAG-19-548

Dear Judge Gallagher:

  I am writing in advance of sentencing in the above-captioned case, currently scheduled for June 22, 2020. The United States respectfully requests that the Court impose a 90-month prison sentence for the Defendant, which is at the low-end of the agreed upon range in the plea agreement.

### Introduction

  The Defendant is a recidivist drug seller. On March 3, 2020, the Defendant pleaded guilty to Count One of the Superseding Information in this case, Possession with Intent to Distribution 40 Grams or More of a Mixture or Substance Containing a Detectable Amount of Fentanyl, in violation of 21 U.S.C. § 841. ECF 33.  The terms of the written plea, entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), include an agreement between the parties that a sentence between 90 and 100 months of incarceration was the appropriate disposition of the case. ECF 30. For the reasons discussed below, the Government recommends a sentence of 90 months' imprisonment for the count of conviction, which the parties agree is the appropriate disposition for Mr. Wilson.  The Government reserves the right to supplement this memorandum with evidence and argument at the sentencing hearing.

### Factual Background

  On November 4, 2019, United States Magistrate Judge A. David Copperthite of the District of Maryland authorized a search and seizure warrant for 5608 Force Road in Baltimore, Maryland; a 2013 Black Mercedes; and Ronald Wilson's person. The Defendant was the target of said warrants. On November 5, 2019, members of the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF") executed the search and seizure warrants. Investigators observed Wilson outside of a laundromat near 5608 Force Road.  Agents read Wilson *Miranda* warnings.

Thereafter, Wilson told investigators that there were drugs inside a black duffle bag hanging on a door in the second-floor bedroom of 5608 Force Road.  Investigators recovered that duffle bag, which contained clear plastic bags containing, in total, approximately 461 grams of fentanyl, packaging materials, and two digital scales.  $1,760 were also recovered from Wilson's vehicle and his person.  Wilson admitted to agents, in substance, that he was a drug dealer. Additionally, in his plea agreement, the defendant admitted that prior to its recovery by ATF, the defendant possessed the drugs with the intent to sell them. ECF 30.

### Sentencing Procedure

In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth a multi-step process for imposing sentence in a criminal case.  *Id*. at 51-52.  A sentencing court should begin by correctly calculating the applicable guidelines range. *Id*. at 49.  After providing the parties with an opportunity to present argument, the district court should then consider the factors set forth in 18 U.S.C. § 3553(a).  Id. at 49-50.  See also United States v. Diosdado-Star, 630 F.3d 359, 363 (4th Cir. 2011).

### Sentencing Guidelines and Criminal History Calculation

The Government agrees with the Criminal History calculation set forth in the Presentence Investigation Report of March 26, 2020 ("PSR"):

- Criminal history category V; PSR at Para 43.

The Government agrees with the Sentencing Guidelines calculations in the PSR:[1]

- The base offense level is 30 because the offense involved more than 400 grams  of fentanyl but less than 1.2 kilograms of fentanyl. U.S.S.G. § 2D1.1(a)(5) & (c)(5).
- The offense level is increased to 34 because the defendant is a career offender. U.S.S.G. § 4B1.1.
- The offense level is decreased by 3 for acceptance of responsibility. U.S.S.G. § 3E1.1.
- The final offense level is 31.

Accordingly, the advisory sentencing guidelines range is 168-210 months of incarceration. Nevertheless, as explained below, a 90-month sentence is the appropriate resolution of this matter.

### Factors Set Forth in 18 U.S.C. § 3553(a)

The factors set forth in Title 18, United States Code, Section 3553(a) include: (1) the nature

---

[1] The Parties' Plea Agreement anticipated a final offense level of 27, but noted that there was no agreement as to Wilson's criminal history, which could alter the final offense level if he was determined to be a career offender.  He was determined to be a career offender and his offense level was appropriately calculated in the PSR.

and circumstances of the offenses; (2) the history and characteristics of the Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the Defendant; (6) the need to provide the Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentencing disparity among Defendants involved in similar conduct who have similar records. 18 U.S.C. § 3553(a).

The Government submits that a sentence of 90 months of imprisonment, is sufficient, but not greater than necessary, to accomplish the goals of the Sentencing Reform Act. In recommending this sentence, the Government acknowledges and recognizes the Defendant's acceptance of responsibility, history, and other personal characteristics. The Government does not believe, however, that a sentence lower than 90 months' imprisonment would be sufficient or appropriate in this case, particularly in light of several of the relevant § 3553(a) factors that are discussed below.

<u>Nature and Circumstances of the Offense</u>

The defendant possessed approximately 461 grams of fentanyl and intended to distribute it.  He admitted that he is a drug dealer.  This amount of fentanyl indicates that the defendant was a supplier – not a street level dealer selling for someone else.  Fentanyl is a highly addictive, dangerous, drug that kills people.  According to the Maryland Department of Health there were 1,888 fentanyl-related deaths in Maryland in 2018.[2]

In addition to killing people, this drug destroy lives and families.  People addicted to drugs such as fentanyl often struggle to maintain employment and care for their families.  They exercise poor judgment, engage in other criminal behavior, and are unable to be productive members of society.  It is people like the defendant, recidivist drug dealers, who continue to inject this poison into the Baltimore community.

Further, the street-level narcotics trade in Baltimore and the surrounding areas is linked to violence, and it is undeniable that drug dealing is a "dangerous transactional business" where a drug dealer may possess firearms to defend his drugs, his drug proceeds, or his person. <u>See</u> <u>United States v. Moore</u>, 769 F.3d 264, 270 (4th Cir. 2014); <u>United States v. Carter</u>, 750 F.3d 462, 470 (4th Cir. 2014) (discussing link between drugs and violence).  This is undoubtedly true in this case, where the defendant's criminal history includes convictions for drug distribution and gun possession.

Accordingly, this is a very serious offense and a 90-month prison sentence is appropriate to address this conduct.

---

[2] https://bha.health.maryland.gov/Documents/Annual_2018_Drug_Intox_Report.pdf

<u>History and Characteristics of the Offender</u>

The Defendant's criminal history is one of drug dealing and gun possession. His prior sentences, many of them completely suspended, did not provide sufficient rehabilitation, nor did they deter him from repeatedly committing similar crimes.  In total, the Defendant has amassed twelve convictions with five of those convictions involving some form of drug distribution and two of them involving firearm possession.

In 1999, the Defendant was convicted of possession of an unlawful substance and given probation before judgement, which was revoked in 2001 when he was found guilty of a probation violation.  But still, his sentence was entirely suspended.  PSR ¶ 30. In 2000, he was convicted of "Controlled Dangerous Substance: Possession with Intent to Manufacture/Distribute/Dispense," and received an almost entirely suspended sentence.  He also violated his probation for this offense, but again received an entirely suspended sentence.  PSR ¶ 31. In 2001, he was found guilty of unlawful possession and "Controlled Dangerous Substance- Possession with Intent to Manufacture/Distribute/Dispense-narcotics-conspiracy," and sentenced to a total of 8 months' incarceration. PSR ¶¶ 32-33.  In 2004, he was convicted of "attempt-controlled dangerous substance manufacture/distribute-narcotics" and CDS possession, for which he received an entirely suspended sentence.  He violated his probation for those convictions and received a one year sentence in 2006.  PSR ¶ 34.

In 2006, the Defendant was convicted of having a handgun on his person and sentenced to three years' incarceration. The circumstances of that offense show that his gun possession appeared to be related to his drug trafficking.  Specifically, an officer observed the defendant engage in what appeared to be an exchange of money for drugs.  The defendant was stopped in a vehicle along with a co-defendant.  A firearm was found in the vehicle, $250 was found on the defendant, and 22 vials of suspected cocaine were found on the co-defendant. PSR ¶ 35. In 2011, the defendant was convicted of "Controlled Dangerous Substance: Possession with Intent to Manufacture/Distribute/Dispense," and received a three year sentence.  In that case, the defendant sold cocaine to an undercover officer.  PSR ¶ 36. In 2015, the defendant was convicted of "Controlled Dangerous Substance: Possession with Intent to Manufacture/Distribute/Dispense," and given an almost entirely suspended sentence.  On this occasion, officers watched the defendant give another drugs for money and arrested the defendant with three bags containing heroin and $210.  PSR ¶ 39. In 2019, the defendant was convicted of possessing a loaded handgun and again given an almost entirely suspended sentence. He committed the instant offense while on probation for this incident.[3]  PSR ¶ 40.

The longest sentence the defendant appears to have received, despite twelve prior convictions for serious conduct, is three years' imprisonment.  The Defendant needs to face a significant sentence to address his criminal conduct as repeatedly leniency has not been sufficient to deter him from continuing his illegal activities.  A 90-month sentence is appropriate based on the defendant's history.  <u>See</u> <u>United States v. Finley</u>, 531 F.3d 288 (4th Cir. 2008) (noting that a defendant who received suspended state sentences in the past was given repeatedly leniency).

---

[3] The defendant also has two convictions for driving or attempting to drive without a license from 2010 and 2014. PSR paras. 37-38.

Indeed, a 90-month sentence is well below the advisory sentencing guideline range for Mr. Wilson. In recommending this downward variance, the Government takes into account the significant mitigating factors discussed in the PSR and the defendant's sentencing memorandum. PSR ¶¶ 90-94; ECF No. 44. These factors offer significant mitigation for the defendant's conduct.

<u>The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant</u>

In crafting the Defendant's sentence, the Court should take into account the seriousness of the Defendant's conduct and the need to promote respect for the law. None of the actions underlying the Defendant's crimes are the result of accident or mistake. Rather, the Defendant's actions appear to show an escalation of criminal activity and drug dealing. He went from being seen engaging in hand-to-hand drug transactions, to possessing firearms to protect his drug transactions, to possessing a significant amount of fentanyl intended for distribution.

While a 90-month sentence will far exceed any period of sustained incarceration served by this Defendant, he is now 39 years old and needs to be deterred from future criminal conduct. The recommended sentence it is appropriate to deter his criminal conduct and protect the public from further crimes.

Lastly, this sentence is important for the impact it will have on other drug traffickers. By imposing a significant sentence on the defendant, the Court would be sending a much needed signal to other drug dealers in Baltimore that harsh consequences follow the distribution of dangerous addictive drugs. Therefore, in order to adequately deter future criminal conduct by drug dealers, the United States recommends a sentence for the defendant at the high end of the agreed upon range.

## Conclusion

Based on the foregoing, the United States respectfully recommends a sentence of 90 months' imprisonment, which would be sufficient but not greater than necessary to comply with the section 3553(a) factors this Court must consider. We thank the Court for its consideration of this matter.

Respectfully Submitted,

Robert K. Hur
United States Attorney

_____/s/_____
Zachary B. Stendig
Lindsey McCulley
Assistant United States Attorneys

cc:     Counsel via ECF