IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| v. | * | |
| **RONALD WILSON,** | * | Criminal No. SAG-19-0548 |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Ronald Wilson, who is presently in the custody of the Bureau of Prisons (BOP) serving a sentence of 90 months incarceration, filed a Motion for Compassionate Release. ECF 68. The Government filed an opposition, ECF 72, and Wilson filed a reply. ECF 74. Having considered the filings, this Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Wilson's Motion will be DENIED, without prejudice to Wilson filing future motions should the reentry services he is provided upon release to BOP community confinement prove inadequate to meet his needs.

**I.      Factual Background**

Wilson was convicted of possession with intent to distribute fentanyl. ECF 30. After considering the entire record, including Wilson's significant physical and mental health conditions, on June 22, 2020, this Court varied downward significantly from the advisory guidelines range and imposed a sentence of 90 months in BOP custody. ECF 49, 50. BOP records presently reflect an anticipated release date of November 9, 2025, and Wilson's prison administrators have informed him that he will likely be transferred to a halfway house at some point between February, 2025 and April, 2025. ECF 68. Wilson now seeks a reduction of his sentence to time served and

`

asks that he be released directly to the community rather than transitioned to a BOP halfway house. *Id*.

## II.    Analysis

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018). While previously, any motion for compassionate release had to be initiated by the BOP, the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." § 603(b)(1). Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier.[1] *Id*. Once a motion is for compassionate release is properly filed, the Court determines whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release and considers whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

### a.    Extraordinary and Compelling Circumstances

To meet the first element for consideration under the First Step Act, then, Wilson needs to demonstrate extraordinary and compelling circumstances justifying consideration of compassionate release. Wilson suggests three related reasons: (1) his substantially diminished capacity to provide self-care in an incarceration setting; (2) long-term deprivation of treatment for

---

[1] The Government does not contest that this administrative prerequisite has been satisfied.

his physical and mental conditions; and (3) abuse he suffered while incarcerated. ECF 68 at 10-19. None of those factors individually, or when taken in combination, amounts to extraordinary and compelling circumstances.

Taking each in turn, Wilson does not contest that he suffered from a multitude of physical and mental conditions at the time of his sentencing, which led this Court to impose the variant sentence of 90 months. He argues, however, that his symptoms "have worsened significantly since his incarceration," ECF 68 at 11. For example, he contends that he has been unable to obtain occupational therapy at the BOP and has not received needed mental health treatment. *Id*. at 13-16. Wilson also had an altercation with a BOP officer on April 27, 2023 that ended with him having a seizure, requiring hospitalization, and experiencing lingering pain and numbness in his right hand. *Id*. at 17-18.

After review of the filings, including the medical records, this Court is unpersuaded by Wilson's contentions. Beginning with the assertion that he is a "victim of abuse" at the hands of the BOP, *id*. at 19, the alleged misconduct has not been "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding" as required by U.S.S.G. § 1B1.13(b)(4)(B). Instead, the exact circumstances of Wilson's injury remain contested and largely unknown.

With respect to the medical care Wilson is able to obtain in prison, this Court is cognizant that compassionate release can be appropriate if "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This Court does not find those conditions to be present here. While Wilson undoubtedly requires certain specialized medical care for his pre-existing conditions, this Court

`

does not find evidence that he has been denied appropriate care or that his conditions have deteriorated in a serious way. The records show that Wilson has received regular medical treatment, particularly after his altercation with the prison employee in April, 2023, and that he began refusing some medical treatment, including occupational therapy appointments, in 2024. *See, e.g.*, ECF 72-1 at 9, 13, 25-27, 69, 71, 72-73.

Ultimately, this Court has considered Wilson's medical conditions and capacity for self-care, the type of treatment available in the BOP, and his argument that he is a "victim of abuse," and has determined that they are not extraordinary and compelling reasons justifying further consideration of compassionate release. Specifically, because this Court finds each factor merits no weight, even considering them in combination does not bring them to an "extraordinary and compelling" level. Accordingly, Wilson is ineligible for further consideration of compassionate release.

   b.  **§ 3553(a) Factors**

Even had Wilson established an extraordinary and compelling reason entitling him to further consideration, 18 U.S.C. § 3553(a) prescribes the factors the Court must assess in determining whether it should reduce a defendant's sentence. *See United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019); *United States v. Logan*, Crim. No. CCB-10-0203, 2019 WL 3391618 *1 (D. Md. July 26, 2019). Those factors are (1) "the nature and circumstances of the offense;" (2) "the history and characteristics of the defendant;" (3) "the need to protect the public from further crimes of the defendant;" and (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Of course, these are the same factors this Court considered in 2020 in deciding the sentence to impose in this case. This Court does not believe any of the factors have changed

materially from the time of its 2020 analysis. Wilson's present medical history does not alter his ability to engage in future crimes or pose a danger to the public. Wilson's prison disciplinary record has not been exemplary, as he has sustained findings for possessing a hazardous tool (a serious 100-level infraction) in 2022 along with his refusal to obey an order in 2023. ECF 68-13 at 4. While he has also participated in some positive institutional programming, Wilson's overall record does not reflect a material change in terms of his history and characteristics or this Court's assessment of his likely impact on public safety.

In total, then, all of the § 3553(a) factors weigh against reducing Wilson's sentence, even assuming that he had been able to demonstrate the extraordinary and compelling reason needed to trigger such an analysis. This Court entirely agrees with Wilson and his evaluating expert, however, that he will be in need of significant services upon his relatively imminent release to ensure that he has the right combination of treatment and resources to allow him to succeed on supervised release and beyond. This Court has been in consultation with the Probation Office regarding Wilson's case. Upon Wilson's transfer to a halfway house, which according to BOP's current schedule will be in a matter of weeks, the Probation Office will begin to work with Wilson to address any issues or barriers to his successful reentry. Should Wilson apply to and gain admission to the TIME Organization's residential program, that program may merit consideration (should there be a mechanism for funding his participation), but this Court cannot order his release with a mere possibility that Wilson might be eligible for the TIME program or that bed space might be available. At present, this Court has not been presented with any definite, suitable residential alternative to a BOP halfway house as an initial point of transition between prison and Wilson's full reassimilation into the community. Absent such an alternative, the standard process will best allow the Probation Office to assess Wilson's needs and formulate an effective reentry plan.

**III.     Conclusion**

In conclusion, after considering all relevant factors, this Court concludes that Wilson has not established an extraordinary and compelling reason to justify accelerating his upcoming release, and that even if he had, his current sentence is most appropriate to accomplish the objectives described in 18 U.S.C. § 3553(a). Accordingly, Wilson's Motion for Compassionate Release, ECF 68, is DENIED. This Court, in conjunction with the Probation Office, will ensure that Wilson is provided appropriate reentry services upon his upcoming transition to community confinement.

A separate Order will issue.

DATED: January 30, 2025                                     /s/
                                                                          Stephanie A. Gallagher
                                                                          United States District Judge